IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**JEFFREY FRIEDLANDER**,                     Case No. 1:09 CV 2743

       Petitioner,                              Judge Benita Y. Pearson

       v.                                        REPORT AND RECOMMENDATION

**MAGGIE BEIGHTLER**, Warden,

       Respondent.                               Magistrate Judge James R. Knepp II


### Introduction

Petitioner Jeffrey Friedlander, a prisoner in state custody, filed a Petition seeking a writ of habeas corpus under 28 U.S.C. § 2254.  (Doc. 1).  Respondent, Warden Maggie Beightler, filed a Return of Writ  (Doc. 5) with exhibits (Docs. 5-1 – 5-28).  Petitioner filed a Traverse. (Doc. 7).

The district court has jurisdiction over the Petition under § 2254(a).  This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2).  For the reasons discussed below, the undersigned recommends the Petition be denied.

### Background

*State Court Proceedings*

In November 2006, a grand jury indicted Petitioner for conspiracy to commit aggravated murder in violation of Ohio Revised Code § 2923.01 and § 2923.01(A) and attempted aggravated murder in violation of Revised Code § 2923.02 and § 2903.01(A).  (Ex. 1, Doc. 5-6, at 1-2).  Each charge had a notice of prior conviction and repeat violent offender specification.  (*Id.*). Petitioner pleaded not guilty.  (Ex. 2, Doc. 5-7).

On May 23, 2007, a jury convicted Petitioner on both counts.  (Doc 5-28, at 348-49; Ex. 3,

Doc. 5-8).  On July 2, 2007, the trial court sentenced Petitioner to five years on each count, to run concurrently.  (Ex. 4, Doc. 5-9).

On July 2, 2007, Petitioner, through new counsel, filed a notice of appeal to the Eighth District Court of Appeals.  (Ex. 5, Doc. 5-10, at 1).  Petitioner raised four assignments of error:

1.      There was insufficient evidence to convict [Petitioner] of the charges.

2.      The conviction of [Petitioner] was against the manifest weight of the evidence.

3.      [Petitioner] was denied the effective assistance of counsel.

4.      By convicting [Petitioner] of attempt and conspiracy to commit the same offense, the trial court violated R.C. 2923.01(G) and committed plain error.

(Ex. 6, Doc. 5-11, at 2).  The state filed a responsive brief.  (Ex. 7, Doc. 5-12).  On June 9, 2008, the appellate court affirmed Plaintiff's conviction for conspiracy to commit murder, but vacated his conviction for attempted aggravated murder.  (Ex. 8, Doc. 5-13); *State v. Friedlander*, 2008 WL 2350893 (Ohio App. 8 Dist.) [*Friedlander I*].  Petitioner appealed to the Ohio Supreme Court (Ex. 10, Doc. 5-15), raising two propositions of law:

1.      Where the evidence adduced at trial is insufficient to support a conviction for an attempt to commit a crime it is necessarily insufficient to support a conviction for a unilateral conspiracy to commit the same offense.

2.      Trial counsel is ineffective where he/she presents evidence to establish an affirmative defense, yet fails to request a jury instruction for the affirmative defense.

(Ex. 11, Doc. 5-16, at 2).  On December 3, 2008, the Supreme Court declined jurisdiction and dismissed the appeal as not involving any substantial constitutional question.  (Ex. 12, Doc. 5-17).

On August 11, 2008, Petitioner filed an application for reopening under Ohio Appellate Rule 26(B), arguing his appellate counsel was ineffective and raising seven issues:

1.      [Petitioner] was denied his right to a fair and impartial trial as guaranteed by the Ohio and United States Constitutions when he was tried in his prison clothes.

2.      The trial court plainly erred in permitting the police officer to testify about the reliability of the non-testifying informant.

3.      [Petitioner's] confrontation rights were violated when the prosecution introduced testimonial statements from a non-testifying informant.

4.      The trial court violated [Petitioner's] due process rights in denying his motion to appoint an expert to determine whether the recorded conversations were altered.

5.      [Petitioner's] trial counsel rendered constitutionally ineffective assistance in failing to object to evidence on reliability of informant and in failing to request a brief continuance so appellant could dress in trial clothes.

6.      The trial court erred and denied [Petitioner] his due process right to a fair trial when it permitted the State to introduce victim-impact evidence.

7.      [Petitioner] was denied his right to a speedy trial.

(Ex. 13, Doc. 5-18, at 6-12).  The state filed a brief in opposition.  (Ex. 14, Doc. 5-19).  On July 7,

2009, the state appellate court denied the application for reopening on the merits, finding Petitioner's

appellate counsel not ineffective.  (Ex. 15, Doc. 5-20); *State v. Friedlander*, 2009 WL 1965450

(Ohio App. 8 Dist.) [*Friedlander II*].  Petitioner appealed to the Ohio Supreme Court (Ex. 16, Doc.

5-21), raising seven propositions of law in support of jurisdiction:

1.      An application to reopen a direct appeal, filed pursuant to App. R. 26(B) should be decided by the same appellate court panel that decided the appeal.

2.      A criminal defendant does not receive the effective assistance of appella[te] counsel when his attorney fails to argue that his right to a fair and impartial trial was denied by being tried, over his objection, in his prison clothes.

3.      A criminal defendant is denied his right to a fair and impartial trial as guaranteed by the Ohio and United States Constitutions when he was tried, over his objection, in his prison clothes.

3

4.      A criminal defendant receives the ineffective assistance of counsel when his trial counsel fails to request a brief continuance so that the defendant can dress in trial clothes and when his appellate counsel fails to raise the ineffectiveness on appeal.

5.      A criminal defendant does not receive the effective assistance of appellate counsel when his attorney fails to argue that his confrontation rights were violated by the admission of testimonial statements from a non-testifying informant and that the trial court erred in permitting a police officer to bolster the reliability of that informant.

6.      The admission of out-of-court statements by a non-testifying informant to a police officer violate[s] a defendant's state and federal confrontation rights.

7.      A police officer may not offer an opinion about the veracity of an informant.

(Ex. 17, Doc. 5-22, at 2).  The Ohio Supreme Court dismissed the appeal as not involving any

substantial constitutional question.  (Ex. 18, Doc. 5-23).

*Federal Habeas Corpus*

On November 23, 2009, Petitioner, through counsel, filed the pending Petition, asserting five

grounds:

1.      Petitioner was denied his right to a fair and impartial trial as guaranteed by the United States Constitution when he was tried in his prison clothes.

2.      Petitioner received the ineffective assistance of trial counsel when his counsel failed to object to petitioner standing trial in his prison clothes and failed to request a brief continuance so petitioner could dress in trial clothes.

3.      Petitioner's confrontation rights, pursuant to the Sixth Amendment to the United States Constitution, were violated when the prosecution introduced testimonial statements.

4.      Petitioner's conviction for conspiracy to commit aggravated murder violates his federal due process rights because it is based on legally insufficient evidence.

5.      Petitioner was denied the effective assistance of appellate counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

4

(Doc. 1).  Respondent filed a Return of Writ (Doc. 5) and Petitioner filed a Traverse (Doc. 7).

## Standard of Review

When the basis for a federal habeas claim has been previously adjudicated by the state courts, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides the writ shall not issue unless the state decision "was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A federal court may grant habeas relief if the state court arrives at a decision opposite to that reached by the Supreme Court of the United States on a question of law, or if the state court decides a case differently than did the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). The appropriate measure of whether or not a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409-11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000).

## Discussion

*Sufficiency of the Evidence*

The state appellate court described the facts presented at trial:

{¶ 2} The evidence adduced at trial demonstrated that on October 12, 2006, an informant named Eddy contacted Cleveland police sergeant Ronald Ross. Eddy had previously worked as an informant for Ross. Eddy told Ross that he was "freaked out," because Friedlander planned to hire a "hit man" to murder David Siss. Eddy gave Ross Friedlander's telephone number and four days later, Ross spoke with Friedlander on the telephone and pretended to be a hit man named "Ted." In a subsequent telephone conversation several days later, Friedlander arranged to meet Ross in the parking lot of a restaurant.

{¶ 3} During that meeting, Friedlander gave Ross a paper which listed Siss's name and address, and stated, "Best Time-Mon-Thurs, Evenings-Not on the Weekends." Friedlander also showed Ross pictures of his van, which Ross was to hold as

5

collateral until he received full payment for the job. Friedlander and Ross then drove to Siss's house so Friedlander could show Ross where Siss lived. After more discussion about the cost of the job, and Friedlander's admission that if he had not found Ross, "I'd still be looking, I guess, or I might have done it myself," undercover officers moved in and arrested Friedlander.

{¶ 4} Recordings of Ross's telephone conversations and his meeting with Friedlander were played for the jury and transcripts of the recordings were made court exhibits.

{¶ 5} After the trial court denied defense counsel's Crim. R. 29(A) motion for acquittal, Friedlander testified in his own defense. He denied any intent to kill Siss, and asserted that the idea originated with Eddy and he felt pressured by Eddy to participate in the scheme. He acknowledged that it was his voice on the tapes, but contended that the tapes had been spliced to insert answers he gave to the police during his interrogation after his arrest.

*Friedlander I*, 2008 WL 2350893. These facts are presumed correct unless Petitioner rebuts them with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 609 F.3d 870, 875 (6th Cir. 2010).

Due process requires conviction only on proof of guilt beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 309-16 (1979) (citing *In re Winship*, 397 U.S. 358, 362-63 (l970)). The standard for sufficiency of the evidence is: "whether after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 318-19 (emphasis in original). "[T]he *Jackson* inquiry does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993) (emphasis in original). In examining a sufficiency claim, a habeas court can only look to "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 318. The court must view the evidence in the light most favorable to the prosecution. *Id.* at 326.

6

Petitioner's sufficiency of the evidence claim is governed primarily by 28 U.S.C. § 2254(d)(2).  This section accords a "double layer of deference" to state prisoner challenges:

> First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, [](1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. *See United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir.1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. *See* 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

Petitioner argues there was insufficient evidence of: 1) purpose or intent to commit aggravated murder; and 2) a substantial overt act in furtherance of the conspiracy.  Respondent contends the state court decision is not an unreasonable application of federal law.

The state appellate court rejected Petitioner's sufficiency claim:

> {¶ 13} In this case, there was ample, compelling evidence that Friedlander committed a substantial overt act in furtherance of the conspiracy to murder David Siss. In his first telephone conversation with Ross, Friedlander admitted that he had asked Eddy to contact Ross. When Ross and Friedlander spoke again several days later, they discussed payment arrangements and whether Friedlander had something to put up as collateral for the job. When they met later that evening, Friedlander showed Ross pictures of his van, which was to be the collateral for the job, and the two men discussed how much it was worth and what the job would cost. Friedlander told Ross that he would "make sure" that Ross got paid for his work. He also gave Ross a paper which contained the typewritten names of Siss and his wife, their address, and the "best time" to find Siss at that address, and he pointed out Siss's house to Ross when the men drove down Siss's street.

> {¶ 14} Ross and Friedlander also discussed how the murder was to take place. When Ross asked Friedlander if he wanted it "done up close and personal," or if he wanted

7

"a message sent," Friedlander stated, "I don't care * * * I just want the kid protected and I don't think she's gonna be."

{¶ 15} In light of this evidence, the jury did not lose its way in finding Friedlander guilty of conspiracy to commit aggravated murder. Friedlander's words and actions were sufficient evidence of substantial overt acts in furtherance of the conspiracy. He spoke with an undercover police detective whom he thought was the hit man, and made arrangements for the murders. He agreed on a price and made payment arrangements. . . .

*Friedlander I*, 2008 WL 2350893.

*Purpose / Intent*

Ohio Revised Code § 2923.01(A)(1) provides: "No person, with purpose to commit or to promote or facilitate the commission of aggravated murder . . . shall . . . [w]ith another person or persons plan or aid in planning the commission of [aggravated murder]".  The aggravated murder statute provides: "No person shall purposely, and with prior calculation and design, cause the death of another".  Rev. Code § 2903.01(A).  "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." *Id.* § 2901.22(A).

The state appellate court's decision that there was sufficient evidence of Petitioner's purpose is not an unreasonable application of federal law.  Petitioner relies on his own testimony and arguments that the recorded conversations were ambiguous.  The prosecution's evidence at trial consisted primarily of Sergeant Ross's testimony and recorded conversations with Petitioner. This was ample evidence from which a jury could conclude Petitioner intended to have the victim killed.

In the car with Ross, Petitioner discussed the custody battle over his niece's child and his concern that her custodian – the intended victim – would not treat her well.  (Doc. 5-27, at 162-64).

8

Petitioner explained he was "just trying to protect [the child]." (*Id.* at 165-66).  Again, when Ross asked Petitioner how he "want[s] this done", he responded that he just "want[s] the kid protected" because he does not "think she's going to be." (*Id.* at 167).  When Ross asked Petitioner if this is "worth getting involved in", Petitioner repeated: "I'm just safeguarding the kid, that's all I can do." (*Id.* at 174).

Ross and Petitioner discussed an "electrical job."  Petitioner himself recounted a conversation in which Eddy, the informant, proposed using the term "electrical job" to mean a hit. (Doc. 5-28 at 85). In the context of discussing the job with Ross, Petitioner handed him a piece of paper with the victim's name, address, and "best time Monday through Thursday evenings, not on the weekend." (Doc. 5-27, at 158-59).  Petitioner discussed how Ross might get into the victim's house – by posing as a potential buyer (*id.* at 166) – and pointed the house out to Ross (*id.* at 168). Petitioner also discussed payment with Ross, specifically the value of his van, and provided pictures. (*Id.* at 160-61, 170-72).  After Ross stated the "van is going to cover most of it", Petitioner responded: "Well, if I have to, I'll have to scratch up the rest" and said he would "make sure" Ross got paid.  (*Id.* at 171-72). When Ross told Petitioner he would need additional payment to get rid of the gun, Petitioner agreed.  (*Id.* at 172).

Finally, Petitioner told Ross that he just did not know what else to do about the custody situation and that if Ross didn't do "it", he "might have done it [himself] when it came down to it. (*Id.* at 175).  Immediately thereafter, when asked if he had ever killed anyone, Petitioner stated he had.  (*Id.*).

Taking these recorded conversations as a whole, there was evidence for a rational jury to find Petitioner had the intent to hire Ross to kill the intended victim. Although Petitioner's testimony

gave a different explanation of the events on the recorded conversations, it was up to the jury, not this Court to make credibility determinations. *Brown*, 567 F.3d at 205 (the court "do[es] not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury"). "[A]fter viewing the evidence in the light most favorable to the prosecution, [a] rational trier of fact could have found the [purpose element] of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 318-19.

*Overt Act*

Revised Code § 2923.01(B) provides a person may not be convicted of conspiracy unless he has performed a "substantial overt act in furtherance of the conspiracy". An overt act is "an open act, done outwardly, without attempt at concealment, and manifesting a specific intent or design." *State v. Papp*, 68 Ohio App. 2d 21, 23 (1980). An act is substantial if it is "of such character that the object of the conspiracy should be completed." Rev. Code § 2923.01(B).

The appellate court also reasonably concluded the evidence of Plaintiff's acts of meeting with Ross (whom he believed to be a hit man), giving Ross a piece of paper with the intended victim's name and address and "best time", showing Ross where the intended victim lived, and making payment arrangements were substantial overt acts to support the conspiracy conviction. Again, although Petitioner presented a different version of events through his testimony – stating he was coerced into the situation, and just trying to sell his van to Ross – it was up to the jury to weigh the evidence and make credibility determinations. *E.g.*, *Brown*, 567 F.3d at 205.

There was sufficient evidence by which a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. As such, Petitioner has failed to show the state court decision was contrary to or an unreasonable application of clearly established federal law.

10

Thus, Ground Four should be denied.

*Ineffective Assistance of Appellate Counsel*

Petitioner concedes that his first, second, and third grounds for relief are procedurally defaulted because he failed to raise them on direct appeal. *See* 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 847-48 (1999). However, Petitioner asserts ineffective assistance of appellate counsel as "cause" for that default and as an independent ground for relief (Ground Five). The Court will therefore examine Petitioner's first, second, and third grounds for relief through the lens of whether Petitioner can show his appellate counsel was ineffective for failing to raise them.

A petitioner may overcome procedural default by showing both cause for the failure to comply with the state procedural rule and prejudice resulting from the alleged constitutional violation. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Demonstrating "cause" requires a petitioner to "show that 'some objective factor external to the defense' prevented the petitioner's compliance with a state procedural rule." *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Demonstrating prejudice requires a petitioner to show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *U.S. v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).

A fairly presented and preserved ineffective assistance of counsel claim may serve as cause to overcome a procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 451-53 (2000). To prevail on an ineffective assistance of counsel claim, a petitioner must satisfy both prongs of the *Strickland* test: deficient performance and prejudice. *Harries v. Bell*, 417 F.3d 631, 636 (6th Cir. 2005) (citing *Strickland v. Washington*, 466 U.S. 668, 686-692 (1984)). Failure of appellate counsel

11

to raise an issue can amount to constitutionally ineffective assistance. *McFarland v. Yukins*, 356 F.3d 688, 710 (6th Cir. 2004). However, "[c]ounsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *Id.* at 699.  If there is a reasonable probability that the defendant would have prevailed, the court must then consider "whether the claim's merit was so compelling that appellate counsel's failure to raise it amounted to ineffective assistance of appellate counsel." *Id.* at 700.

*Prison Clothing*

Petitioner argues appellate counsel was ineffective for failing to raise two issues related to his clothing: 1) Petitioner's being tried in jail clothing over his objection; and 2) trial counsel was ineffective for failing to ask for a continuance to obtain different clothes.

Compelling a defendant to stand trial in prison attire violates due process.  *Estelle v. Williams*, 425 U.S. 501, 512-13 (1976).  This is so because "the constant reminder of the accused's condition implicit in such distinctive, identifiable attire may affect a juror's judgment.  The defendant's clothing is so likely to be a continuing influence throughout the trial that . . . an unacceptable risk is presented of impermissible factors coming into play." *Id.* at 504-05. However, "the court is not required to furnish alternate clothing for the defendant", even if he objects. *U.S. v. Williams*, 641 F.3d 758, 767 (6th Cir. 2011) (citing *U.S. v. Brown*, 367 F.3d 549, 554 (6th Cir. 2004)).[1] Where a court would have permitted a defendant to change if someone brought him other clothing, or was willing to wait for someone to bring other clothing, there is no constitutional

---

[1] The Sixth Circuit's position is contrary to the non-binding Ninth Circuit cases Defendant cites, which hold the State has an affirmative duty to provide civilian clothes or reasonable funds to purchase clothes.  *See Felts v. Estelle*, 875 F.2d 785, 786 (9th Cir. 1989); *Bentley v. Crist*, 469 F.2d 854 (9th Cir. 1972).

violation when a defendant is tried in jail clothing.  *Williams*, 641 F.3d at 767 (no constitutional violation when district court would have allowed defendant to change if someone provided clothing); *Brown*, 367 F.3d at 554 (wearing prison clothing did not violate defendant's rights where the court was willing to wait for family members to bring other clothing, but they failed to do so). A defendant's failure to object to standing trial in prison clothing negates the compulsion aspect. *Estelle*, 425 U.S. at 512-13.  The willingness of the court to permit a defendant to change also eliminates the compulsion aspect, and therefore the constitutional violation.  *Williams*, 641 F.3d at 641 ("Therefore, because the district court would have allowed Williams to change into other clothing if someone provided it for him, it did not force him to appear in prison attire and did not violate his constitutional right to a fair trial.").

Here, there was some brief pretrial discussion of Petitioner's clothing:

[Defense Counsel]:     First of all, I notice that he's not in trial clothes.  I had spoken to him before about getting trial clothes.  He doesn't have them available, and I think we discussed this, he has no objection to going forward without his trial clothes.  I believe that's correct.  Is that correct?

[Petitioner]:     Objection.

* * *

The Court:     One other thing, you have the right to dress in civilian clothes during the course of the trial.

[Petitioner]:     I have none here, Your Honor.

The Court:     Pardon?

[Petitioner]:     I have none here.

The Court:     Is that correct?  I thought you refused.

[Petitioner]:     They posted notes in the jail stating any property that's left over 30 days would be disposed of, so I had my family pick

13

|  | everything up. |
|---|---|
| The Court: | I was informed that you refused today to - - |
| [Petitioner]: | No, I told them I have no clothes here.  I have nothing in personal property. |
| The Court: | And did you indicate to your client that he would be able to - - |
| [Defense Counsel]: | I told him it would be up to him to have trial clothes if he wanted to show up for trial in them, like you tell every client who is in jail and discuss it with the family, that you have to bring it - - they can't bring it the day of trial. |
| The Court: | All right.  Is the jury up right now? |

(Doc. 5-27, at 6, 29-30).

The appellate court rejected Petitioner's ineffective assistance of appellate counsel claim on this issue, finding no compulsion:

> {¶ 4} In his first proposed assignment of error, Friedlander argues that the trial court erred by holding his trial while he was wearing prison clothes. As part of his fifth proposed assignment of error, he argues that trial counsel was ineffective for failing to request a continuance to permit Friedlander to dress in trial clothes.

> {¶ 5} Friedlander asserts that the trial court required him to stand trial in jailhouse clothing. Defense counsel acknowledged on the record, however, that – prior to trial – counsel had informed Friedlander that it was Friedlander's responsibility to ensure that he arrange with his family to bring clothing prior to the day of trial. Friedlander's characterization of the trial court as having compelled him to stand trial in prison clothing is, therefore, inaccurate. FN8 The circumstances which gave rise to Friedlander's being tried in jailhouse clothing do not present a genuine issue of whether he was deprived of the effective assistance of appellate counsel. Similarly, we cannot conclude that trial counsel was ineffective for failing to request a continuance, particularly in light of the fact that the docket reflects and the trial court observed that the trial had been continued several times. As a consequence, Friedlander's first and fifth proposed assignments of error do not provide a basis for reopening.

> > FN8. Contrast the cases cited in *State v. Collins*, Cuyahoga App. No. 89808, 2008-Ohio-3016, at ¶ 15, as standing for the proposition "that a defendant who is *compelled* to stand trial wearing identifiable prison clothing suffers prejudice that unconstitutionally undermines

> the presumption of innocence." *Id.* (Emphasis added; citations
> deleted.)

*Friedlander II*, 2009 WL 1965450, *1 (footnotes seven and nine omitted).

Petitioner and Respondent dispute whether there was compulsion here.  Although Petitioner objected to being tried in jail clothing, both he and defense counsel stated he had no other clothes available.  Defense counsel also explained he had informed Petitioner it was his responsibility to have clothing available for trial.  Given the Sixth Circuit's holding that there is no constitutional violation in proceeding with a trial with a defendant in jail clothing if the defendant fails to provide alternate clothing, *Williams*, 641 F.3d at 762-63, 767, the undersigned concludes the appellate court's decision here was not contrary to or an unreasonable application of *Estelle*.  Although in *Williams* and *Brown*, the trial courts more explicitly stated they would permit the defendant to change if other clothes were provided, Petitioner here bears the heavy burden of showing not only were his constitutional rights violated, but also – because the issue is procedurally defaulted – that appellate counsel was ineffective for failing to raise the issue. Neither Petitioner nor his counsel at any time indicated that Petitioner had clothes available or could obtain clothes for trial.  The trial court also made sure – through its colloquy with counsel – that Petitioner had been informed that it was his burden to ensure clothes were available at the time of trial. The Court cannot conclude that it was objectively unreasonable for appellate counsel not to raise this issue on direct appeal.

Petitioner secondly contends appellate counsel was ineffective for failing to argue trial counsel was ineffective for failing to ask for a brief continuance so Petitioner could retrieve trial clothing.  The undersigned also concludes it was not objectively unreasonable for appellate counsel to fail to raise this issue.  First, as the court in *Estelle* recognized, "it is not an uncommon defense tactic to produce the defendant in jail clothes in the hope of eliciting sympathy from the jury." 425

U.S. at 508.  Thus, appellate counsel could reasonably have assumed trial counsel was not ineffective for failing to request a continuance.  Second, as the appellate court noted, the trial had been continued numerous times, and it seems unlikely the trial court would have granted a continuance for Petitioner to obtain clothing had trial counsel requested it.[2]  This is especially so given an exchange between Petitioner and the court the morning of trial:

| [Petitioner]: | Would it be possible to get a continuance for seven days? |
|---|---|
| The Court: | No.  We're going to proceed to trial on this matter.  You have had your case set a number of times earlier. |
| [Petitioner]: | There has been no opportunity on my part to impeach the evidence, to bring in any experts. |
| The Court: | You have already addressed that and your objections have been preserved. |

(Doc. 5-27, at 29).  Although the trial court might have granted a continuance for a different reason if it were requested, in light of these surrounding facts, Petitioner has not shown "a reasonable probability that inclusion of the [ineffective assistance of trial counsel for failure to request a continuance] would have changed the result of the appeal" and, even if so, that "the claim's merit was so compelling that appellate counsel's failure to raise it amounted to ineffective assistance of appellate counsel."  *McFarland*, 356 F.3d at 699-700.

Thus, Petitioner's first and second grounds for relief fail.  His fifth ground also fails, to the extent it is based on his first and second ground.

*Confrontation Clause*

---

[2] Petitioner is correct that the previous continuances were due to scheduling conflicts between defense counsel and the Court and not at Petitioner's request.  (*See* Ex. 19, Doc. 5-24, at 5-6).

In his third ground for relief, Petitioner argues his confrontation rights were violated when the trial court permitted a police officer to testify regarding statements made by a confidential informant.  Again, because this issue was not raised on direct appeal, Petitioner argues appellate counsel was ineffective for failing to raise it as cause.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend VI. This right is incorporated against the states through the Due Process Clause of the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 406 (1965).  In *Crawford v. Washington,* 541 U.S. 36 (2004), the Supreme Court held that testimonial out-of-court statements by witnesses are barred under the Confrontation Clause unless the witnesses are unavailable, and the defendant had a prior opportunity to cross-examine them, regardless of the reliability of the statements.  A statement is testimonial if a reasonable person in the declarant's position would have anticipated the use of the statement in a criminal proceeding.  *U.S. v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2004).  Thus, "statements of a confidential informant are testimonial." *Id.* The Confrontation Clause, however, "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford*, 541 U.S. at 59; *U.S. v. Davis*, 577 F.3d 660, 670 (6th Cir. 2009) ("[T]o constitute a Confrontation Clause violation, the statement must be used as hearsay – in other words, it must be offered for the truth of the matter asserted." (internal quotation marks and citation omitted)).  A defendant's "confrontation right [is] not implicated [where] the testimony [is] provided by way of background." *Cromer*, 389 F.3d at 676; *see also U.S. v. Caver*, 470 F.3d 220, 239 (6th Cir. 2006) ("Background information that explains how law enforcement came to be involved with a particular defendant is not hearsay, because it is not being offered for the truth of the matter asserted.").

17

Petitioner identifies two categories statements by Ross at trial that he alleges violated his confrontation rights:

1.  Testimony that the informant was "freaked out" because he was "concerned for the victim's safety"; and testimony that based on the Detective's conversation with the informant that it was his understanding Petitioner was looking to hire someone to kill the victim.

2.  Testimony that the Detective believed Petitioner understood the term "electrical job" to be code for murder based on his conversations with the informant.

First, Petitioner argues the following exchanges between the prosecutor and Ross violated his confrontation rights:

Q:    What was Eddy's demeanor when he told you about what he knew?

A:    Eddy was - -  he was freaked out about it.  He said he had never been - -

        [Defense counsel]:        Objection.
        The Court:                    Overruled as to that.  You can answer that question.

A:    He was freaked out about it.

        The Court:                    You can't testify as to what he told you.
        The Witness:                Oh, okay.

Q:    What do you mean by "freaked out" about it?

        [Defense counsel]:        Objection.
        The Court:                    Let's have a sidebar.
        [Discussion held off the record.]

Q:    Was Eddy, was his demeanor somehow different than when he had given you information in the past?

A:    Yes.

Q:    How was it different?

A:    He was concerned for the intended victim's safety.

18

(Ex. 27, Doc. 5-27, at 126-27). After briefly describing the beginnings of his investigation – that he planned to go undercover and portray himself as a hit man to Petitioner – Ross testified further:

> Q:    Was that your understanding of what [Petitioner] was looking for?
>
> A:    Yes.
>
> Q:    And this was your understanding after your conversations with Eddy?
>
> A:    Yes.

(*Id.* at 128).  Respondent contends these statements were simply offered as background to explain Ross's actions, and were therefore not offered for their truth.

Second, Petitioner objects to Ross's testimony that Petitioner understood the term "electrical job" to mean murder.  The prosecutor elicited the following testimony from Ross:

> Q:    The term electrical job which you were substituting for murder here, was that something that you believed the Defendant to understand?
>
> A:    Yes.
>
>     [Defense counsel]:    Objection.
>     The Court:            Overruled.
>
> Q:    And how is it that you believed he understood that electrical job meant murder?
>
> A:    It was a code the informant told him that I would refer to it as.
>
>     [Defense counsel]:    Objection.
>     The Court:            Sustained.
>
> Q:    Is that something you had worked out with Eddy?
>
> A:    Yes.

(Doc. 5-27, at 144-45).  Respondent argues any error in this regard was harmless.

The state appellate court found no confrontation clause violation, and held Petitioner had not

19

demonstrated any prejudice to succeed on his ineffective assistance of appellate counsel claim:

> This court has already rejected this argument in an application for reopening. "In his third proposed assignment of error, [applicant] Townsend argues that appellate counsel was ineffective for failing to assign as error that Townsend's right to confront a witness was violated because a detective was permitted to testify as to statements made to the detective by a confidential informant. ' "It is well established that extrajudicial statements made by an out-of-court declarant are properly admissible to explain the actions of a witness to whom the statement was directed. * * * The testimony was properly admitted for this purpose." *State v. Thomas* (1980), 61 Ohio St.2d 223, 400 N.E.2d 401; *State v. Jenkins*, Cuyahoga App. No. 87606, 2006 Ohio 6421.' *State v. Guyton*, Cuyahoga App. No. 88423, 2007 Ohio 2513, at ¶ 17. Clearly, the statements of the informant were admitted to explain the steps taken by the police to investigate Townsend's activities. As a consequence, Townsend's third proposed assignment of error does not provide a basis for reopening." FN11
>
> > FN11. *State v. Townsend*, Cuyahoga App. No. 88065, 2007-Ohio-2370, reopening disallowed, 2007-Ohio-6638, at ¶ 11, appeal dismissed as not involving any substantial constitutional question in 117 Ohio St.3d 1462, 2008-Ohio-1635, 884 N.E.2d 69.
>
> {¶ 12} Similarly, in this case, the state argues that the extrajudicial statements by the out-of-court declarant were admitted to explain the actions of Ross. In fact, the trial court sustained defense counsel's objection to testimony by Ross regarding what Eddy said to Ross. The trial court also instructed Ross that he could not testify as to what Eddy said to Ross. Appellate counsel was not, therefore, deficient by failing to assign as error that Friedlander's right to confront the witnesses against him was violated by the testimony by Ross regarding Eddy or that trial counsel was ineffective. Likewise, Friedlander has not demonstrated any prejudice. As a consequence, Friedlander's second, third and fifth proposed assignments of error do not provide a basis for reopening.

*Friedlander II*, 2009 WL 1965450 (footnote 12 omitted).

Statements from the informant are testimonial. *Cromer*, 389 F.3d at 676.  Thus, the question is only whether any statements were admitted for their truth or for a non-hearsay purpose.  And then, even if the state court's determination was wrong, Petitioner is entitled to habeas relief only if the state court's decision was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409-11.  Additionally, because the issue is procedurally defaulted, this Court

may only grant relief if it was *also* ineffective assistance of counsel not to raise the issue on direct appeal.  However, the Court need not resolve the question of whether the statements violated Petitioner's confrontation rights for two reasons.  First, even if the statements violated Petitioner's confrontation rights, any violation was harmless.  And second, Petitioner has not shown appellate counsel was ineffective for failing to raise the issue.

On habeas review, a constitutional error is considered harmless unless it can be shown to have "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 622 (1993) (quoting *Kotteakos v. U.S.*, 328 U.S. 750, 776 (1946)).  Courts apply this "actual prejudice" standard regardless of whether the state appellate court determined that the error was harmless beyond a reasonable doubt under *Chapman v. California*, 386 U.S. 18 (1967). *Fry v. Pliler*, 551 U.S. 112, 121–22 (2007).  The conviction must stand if on review of the record, the Court is convinced that "the error did not influence the jury or had but slight effect." *O'Neal v. McAninch*, 513 U.S. 432, 435-38 (1995).  If, on the other hand, there is "grave doubt" as to whether the error had such an effect, "that error is not harmless." *Id.* at 436.  "Grave doubt" means "that, in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." *Id.* at 435.

Confrontation Clause violations are subject to this harmless error review. *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986); *Jordan v. Hurley*, 397 F.3d 360, 363 (6th Cir. 2005). In conducting this analysis, courts look to "a host of factors," such as "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's

case." *Id.*

First, as to the testimony about the meaning of "electrical job", Petitioner himself testified Eddy proposed this term to him.  (Doc. 5-28, at 85).  Thus, in the context of the whole trial, any improper admission of where the term "electrical job" originated is harmless.

Second, Petitioner also testified he understood he was meeting with someone he believed to be a hit man.  (*Id.* at 78, 87).  And the recorded conversations bear that out:

| | |
|---|---|
| [Ross]: | I mean, you know, if you didn't get me to do it, you're still in the same boat. |
| [Petitioner]: | I'd still be looking, I guess, or I might have done it myself when it came down to it. Window of opportunity. |
| [Ross]: | Have you ever killed anybody before, man? |
| [Petitioner]: | Yeah. |
| [Ross]: | You know it's not pretty, right? |
| [Petitioner]: | No, it's not.  It's not like you see in the movies.  It kind of ruins movies for me. |

(Doc.  5-27, at 175). Additionally, Petitioner presented his own version of his conversations with Eddy.  (Doc.  5-28, at 72-85).

Third, the prosecution's case consisted primarily of recorded conversations between Petitioner and Ross.  Petitioner provided Ross with the intended victim's name and address (*id.* at 158-59), explained the custody dispute which led Petitioner to harbor ill will toward the victim (*id.* at 162-67), showed the officer where the victim lived (*id.* at 168), and discussed payment terms (*id.* at 160-61, 171-72)), including agreeing to an additional payment for disposing of a gun (*id.* at 172). As discussed above, there was sufficient recorded discussion between Petitioner and Ross to show the two were discussing Petitioner hiring Ross for a hit.  (*Id.* at 162-67 (Petitioner stating he wanted

to protect the child); 170-72 (payment discussion); 175 (Petitioner stating if Ross did not do this, he might, and thereafter acknowledging he had killed someone before)).

Given the strength of the prosecution's case against Petitioner based on his own recorded statements, any confrontation clause violation here was harmless beyond a reasonable doubt.  Even were the Court to find the error not harmless, it is a close enough question that the Court cannot conclude it was objectively unreasonable for appellate counsel not to raise this issue on appeal.  This is particularly so given that the trial court sustained numerous objections to Ross testifying about what the informant told him.  (*See* Doc. 5-27, at 124-27, 144-45).  Appellate counsel could have reasonably concluded that any confrontation clause violation was harmless and decided not to raise it.  Petitioner has not shown that even if there was "a reasonable probability that inclusion of [the confrontation clause issue] would have changed the result of the appeal", "the claim's merit was so compelling that appellate counsel's failure to raise it amounted to ineffective assistance of appellate counsel." *McFarland*, 356 F.3d at 699-700.  As such, Petitioner's third ground, and fifth ground to the extent it is based on his third ground, must fail.

### Conclusion and Recommendation

Following review, the undersigned recommends the court find all grounds in the Petition without merit.  There has been no demonstrated need for an evidentiary hearing. The Petition should be denied.

<u>        s/James R. Knepp II                    </u>
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within

fourteen days of service of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).